# United States Court of Appeals
## For the First Circuit

No. 12-2419

BETZAIDA RIVERA-ALMODÓVAR,

Plaintiff, Appellant,

v.

INSTITUTO SOCIOECONÓMICO COMUNITARIO, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Torruella, Selya and Howard,
Circuit Judges.

Johanna M. Emmanuelli Huertas and Pedro Ortiz Álvarez, LLC on brief for appellant.
Carlos George-Iguina and O'Neill & Borges, LLC on brief for appellees.

September 11, 2013

**SELYA, <u>Circuit Judge</u>.**  When a party takes a languid approach both to completing pretrial discovery and to the imminent threat posed by a motion for summary judgment, bad things usually happen.  Although such a party may scramble valiantly to regain lost ground, he should not be surprised to encounter an inhospitable reception.  "[C]ourts — like the Deity — are more prone to help those who help themselves."  <u>Williams</u> v. <u>Drake</u>, 146 F.3d 44, 50 (1st Cir. 1998).  So it is here.

## I.  BACKGROUND

The facts giving rise to the underlying litigation are chronicled in the magistrate judge's report and recommendation, <u>see</u> <u>Rivera-Almodóvar</u> v. <u>Instituto Socioeconómico Comunitario, Inc.</u>, No. 10-1885, slip op. at 1-10 (D.P.R. July 5, 2012) (unpublished), and it would be pleonastic to rehearse them here.  We offer instead a brief sketch limning the origin and travel of the case.

Plaintiff-appellant Betzaida Rivera-Almodóvar began working for defendant-appellee Instituto Socioeconómico Comunitario, Inc., commonly known by its acronym "INSEC," in 1988.  She worked her way up to a supervisory position.  Over time, however, storm clouds gathered; starting in 2003, employees under her charge began complaining that she was guilty of misconduct, mistreatment, and abuse.  INSEC responded by meting out a series of progressive disciplinary sanctions (including demotion and suspension).  When these measures proved ineffectual, INSEC

-2-

terminated the plaintiff's employment on August 10, 2009. It premised this adverse employment action on performance-related grounds.

The plaintiff repaired to the federal district court. She sued her employer and several of its hierarchs (collectively, "INSEC"), alleging that she had been cashiered in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and local law.

In its initial scheduling order, see Fed. R. Civ. P. 16(b), the district court set a discovery deadline of October 30, 2011. This deadline encompassed a period of more than a year after the commencement of the action and more than seven months after the initial scheduling conference itself. The order contained a stern warning: any motion seeking to extend the discovery deadline must show good cause and "must be filed well in advance of the deadline."

On October 12, 2011, the plaintiff filed an unopposed motion to extend the discovery deadline to November 15, alluding, inter alia, to an unanswered discovery request. That request sought production of various documents including contracts, grievances and information about certain personnel actions. The plaintiff averred that production of these documents was a necessary prerequisite to the taking of two anticipated depositions. The district court allowed the extension.

-3-

At the end of October, INSEC delivered several documents to the plaintiff. On November 15 — the last day of the extended discovery period — the plaintiff claimed for the first time that these documents were not responsive to her August 19 request for production. At 7:38 p.m. on that evening, her attorney sent an e-mail to this effect to opposing counsel. INSEC did not respond, and the discovery period expired.

Two days later, the plaintiff moved for a further extension of the deadline. She again cited her need for the requested documents and the two depositions. INSEC opposed the motion, maintaining that the plaintiff had been accorded ample time to conduct discovery and that her professed plight was attributable to her own lack of diligence. INSEC also noted that most of the requested documents did not exist and that others were so vaguely described that compliance was impossible.

Acting pursuant to a reference order, see Fed. R. Civ. P. 72(a), a magistrate judge denied the extension motion on December 14, 2011. The magistrate judge wrote: "Plaintiff cannot simply sit on her hands until after the discovery period has expired and then claim that defendants have not complied with their discovery obligations."

In the meantime, INSEC had moved for summary judgment, asserting that the plaintiff's unacceptable job performance, rather than any age animus, led to her dismissal. The plaintiff responded

-4-

to both the magistrate judge's ruling and the summary judgment motion by filing an omnibus motion entitled "Motion for Reconsideration of Extension of Denial for Discovery and Under Rule 56(D); And Motion to Compel." This motion functioned not only as a petition to reconsider the magistrate judge's ruling but also as a request for relief under Rule 56(d).

In the motion, the plaintiff claimed that the court's denial of her motion to extend discovery amounted to "harsh and unusual punishment." She posited that INSEC's failure to accomplish the document production left her "defenseless" and unable to respond adequately to the summary judgment motion. Accordingly, she beseeched the court to reconsider its denial of her request to extend the discovery deadline, allow further discovery, and defer a decision on summary judgment pursuant to Rule 56(d).

The magistrate judge summarily denied the plaintiff's motion in all respects. He subsequently recommended the entry of summary judgment in favor of INSEC on the plaintiff's ADEA claim. Rivera-Almodóvar, supra, at 21. The district court adopted these recommendations,[1] and this timely appeal followed.

---

[1] The magistrate judge also recommended that the claims under Puerto Rico law be dismissed without prejudice. Rivera-Almodóvar, supra, at 21. The district court, declining to exercise supplemental jurisdiction, see 28 U.S.C. § 1367(c), adopted this recommendation as well. This ruling is not challenged on appeal.

## II.  ANALYSIS

Before us, the plaintiff does not contest the merits of the summary judgment order.  Rather, she argues that the court abused its discretion by denying (i) a discovery extension and (ii) Rule 56(d) relief.  We address these procedural arguments sequentially.

### A.  Discovery Extension.

In passing upon the district court's refusal to extend the discovery deadline, we bear in mind that review of a district court's exercise of its case management authority is highly deferential.  See Thibeault v. Square D Co., 960 F.2d 239, 242 (1st Cir. 1992).  Consequently, appellate review of a district court's case management orders, such as a scheduling order, is solely for abuse of discretion.  See Vélez v. Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004).

In the ordinary course, a litigant who seeks an extension of time must show good cause for the desired extension.  See Fed. R. Civ. P. 6(b)(1).  But where, as here, the litigant is faced with an expired deadline, more is required: she must show that her failure to request an extension in a timeous manner constitutes excusable neglect.  See id.

In federal civil procedure, "excusable neglect" is a term of art.  It encompasses "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's

-6-

control."   Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993).  Determining the existence vel non of excusable neglect is an equitable exercise that takes into account the totality of the circumstances.   See id. at 395; Nansamba v. N. Shore Med. Ctr., Inc., ___ F.3d ___, ___ (1st Cir. 2013) [No. 13-1266, slip op. at 10].   Even so, a lawyer's "inattention or carelessness," without more, "normally does not constitute 'excusable neglect.'"   Dimmitt v. Ockenfels, 407 F.3d 21, 24 (1st Cir. 2005).

Here, the plaintiff does not point to any relevant circumstances that were beyond her control.  She relies instead on INSEC's alleged failure to comply promptly and fully with her request for production of documents.  We conclude, however, that the district court had good reason to believe that the plaintiff's plight was the result of her lackadaisical approach to discovery. She sat on her hands for nearly a year before requesting the disputed documents in August and then let her request linger during the three months between its promulgation and the expiration of the extended discovery deadline.  The evidence of record indicates that the only action that she took to procure these supposedly vital documents prior to that looming deadline was an e-mail to opposing counsel on the evening of the last day of the extended discovery

period.[2]  We think that the court below, in the exercise of its discretion, was entitled to regard this last-minute effort as too little and too late.

The plaintiff counters by noting that her first motion for an extension of the discovery deadline mentioned her outstanding discovery request.  That motion, however, did not seek either to compel discovery or otherwise to advance her outstanding request.  Merely alluding to the outstanding request in passing was of little moment.

In an apparent attempt to divert attention from her record of passivity, the plaintiff insists that obtaining the sought-after discovery prior to the deadline would have required heroic measures.  This is important, she says, because "the burden of compliance lies foremost with the party from whom the discovery is sought."  Carmona v. Toledo, 215 F.3d 124, 135 (1st Cir. 2000) (internal quotation mark omitted).  We think that this is an overly simplistic view.  While a requestor may not be required to take heroic measures to assure compliance, see id., she cannot simply ask for discovery and then forget about it.  See Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 11 (1st Cir. 2007).

---

[2] In their briefs, the parties dispute whether the plaintiff followed up via telephone regarding the outstanding documents. What is important for present purposes is that there is no evidence of record indicating any pursuit of these documents prior to the aforementioned e-mail.

The plaintiff's situation did not call for heroic measures but, rather, for a routine motion to compel. See Fed. R. Civ. P. 37(a). A motion to compel is a standard tool, well within the capability of any reasonably diligent litigant. The Civil Rules furnish litigants with this tool for a reason, and the tool should be employed when — as in this case — its use is appropriate.

Of course, Rule 37 requires that a party who wants to file a motion to compel must make a good faith effort to negotiate with the nonresponsive party. See Fed. R. Civ. P. 37(a)(1); D.P.R.R. 26(b). This requirement, the plaintiff laments, hampered her ability to make a motion to compel because she could not negotiate until she had figured out that the documents the defendants produced at the end of October were nonresponsive to her August request.

This lamentation is triply flawed. First, it overlooks that the plaintiff did not seek production of the documents for nearly a year after she brought suit. Second, it overlooks that the plaintiff has offered no evidence that she did anything but sit idly by from August until mid-November without trying either to negotiate compliance or to compel production.[3] Third, it overlooks the absence of any explanation as to why it took the plaintiff over

_____

[3] While the good-faith provision of Rule 37(a)(1) serves a useful purpose, we do not think that it countenances the sort of hopeful waiting in which the plaintiff engaged here.

-9-

two weeks to match the documents produced with the demand for production.

The plaintiff's procrastination is especially egregious in light of the district court's bold print warning that requests for extensions of the discovery deadline were to be filed <u>prior</u> to the expiration of that deadline. The plaintiff has shown no good cause for disregarding this aposematic warning. Where, as here, a district court in the exercise of its case-management authority "sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance." <u>Vélez</u>, 375 F.3d at 41.

The plaintiff has a fallback position. She claims that INSEC's objections to her discovery requests were overbroad and lacked specificity. Regardless of whether this characterization is accurate, it is beside the point. In assessing the district court's decision to deny the plaintiff's untimely motion for an extension, our focus is on the plaintiff's acts and omissions. Two wrongs do not make a right, and nothing about INSEC's objections explains the plaintiff's failure to make the slightest effort to ensure that discovery was completed within the allotted timeframe.

To say more on this issue would be to paint the lily. The short of it is that the denial of the plaintiff's untimely motion for an extension fell within the broad compass of the district court's discretion.

## B. **Rule 56(d).**

We turn next to the plaintiff's entreaty that the district court should have granted Rule 56(d) relief.[4]  Rule 56(d) serves a valuable purpose.  It protects a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion.  See Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 3 (1st Cir. 2004).  Such a need may arise because, say, a party has not had a fair opportunity to conduct necessary discovery.  See Vélez, 375 F.3d at 39.

Rule 56(d) is not self-executing but, rather, must be appropriately invoked.  See id.  In order to obtain its benefit, the moving party must by affidavit or in some other authoritative manner:

> (i) explain[] his or her current inability to adduce the facts essential to filing an opposition, (ii) provide[] a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicate[] how those facts would influence the outcome of the pending summary judgment motion.

---

[4] We have described the function of Rule 56(d), formerly Rule 56(f), in the following way: "if a party opposing summary judgment shows that, for specified reasons, it cannot present facts essential to justify its opposition, the court may grant appropriate relief."  Jones v. Secord, 684 F.3d 1, 6 (1st Cir. 2012) (internal quotation marks omitted).  To avoid any confusion, we note that, notwithstanding the renumbering of the Rules, our earlier cases under former Rule 56(f) remain good law vis-à-vis current Rule 56(d).  See Nieves-Romero v. United States, 715 F.3d 375, 381 n.3 (1st Cir. 2013); see also Fed. R. Civ. P. 56 advisory committee's note.

Id. at 40.

But there is a caveat: the rule "is not designed to give relief to those who sleep upon their rights." Rivera-Torres, 502 F.3d at 10. It follows that "a party seeking to derive the benefit of [this rule] must demonstrate due diligence both in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion has surfaced." Id. at 11.

We review a district court's denial of a Rule 56(d) motion for abuse of discretion. See id. at 10; Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994). We discern no abuse of discretion here.

To make use of Rule 56(d), a party "must demonstrate good cause for failure to have conducted the discovery earlier." Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988). Here, the plaintiff's attempt to portray herself as diligent for this purpose requires the same analysis as did our examination of her professed diligence in seeking a further extension of the discovery deadline. See supra Part II(A). Thus, we need neither repastinate soil already well plowed nor construct a lengthy exegesis explaining why the district court had room to find that the plaintiff failed diligently to pursue discovery. As recounted above, the plaintiff slumbered through discovery and never seasonably availed herself of the discovery-enforcement tools

that were at her disposal. This sort of circumstance has considerable force in our review of the denial of a Rule 56(d) motion. See, e.g., Rivera-Torres, 502 F.3d at 11; Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 45 (1st Cir. 1998). "Although a district court should generally apply Rule [56(d)] liberally, the court need not employ the rule to spare litigants from their own lack of diligence." Paterson-Leitch Co., 840 F.2d at 989.

That ends this aspect of the matter. We conclude that the plaintiff's lack of diligence in pursuing discovery was, on the facts of this case, a sufficient reason for the district court, in its discretion, to deny relief under Rule 56(d). After all, Rule 56(d) is meant "to minister to the vigilant, not to those who slumber upon perceptible rights." Resolution Trust, 22 F.3d at 1203.

## III.  CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**